IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLEY B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 24 C 3637 |
| v. | ) |
| | ) Magistrate Judge |
| LELAND DUDEK, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Kelley B.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Leland Dudek is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

1

# BACKGROUND

## I. PROCEDURAL HISTORY

On October 8, 2021, Plaintiff filed an application for DIB, alleging disability since March 31, 2021. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 28, 2023. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert ("VE") Dennis Gustafson also testified.

On August 23, 2023, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 31, 2021. At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, psoriatic arthritis, disc bulging/scoliosis/spondylosis of the lumbar spine, ad bilateral carpel tunnel syndrome. The ALJ concluded at step three that

2

her impairments, alone or in combination, do not meet or medically equal a listed impairment. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work with the following additional limitations: Plaintiff can never climb ladders, ropes, or scffolds; no more than frequently balance; and no more than occasionally climb ramps/stairs, stoop, crouch, kneel, and crawl.

At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as an administrative clerk and a daycare worker. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of

specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus "limited to ensuring that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024); *see Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of

4

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *see Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024) ("[S]ubstantial evidence [is] a standard that the Supreme Court has emphasized is light.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. At all times, the burden of demonstrating disability remains on the claimant. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). "It is not enough to nitpick the ALJ's order. To warrant reversal, [the claimant] must show that the ALJ's determination was not supported by substantial evidence." *Morales*, 103 F.4th at 471 (explaining further that claimants "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record").

ALJs therefore "are subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence . . . or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053.

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). ALJs must "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Warnell*, 97 F.4th at 1054; *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Furthermore, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion" but must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) The ALJ's failure to include manipulative limitations in her residual functional capacity finding violated Social Security Ruling ("SSR") 96-8p; (2) The ALJ's evaluation of the opinion of Plaintiff's treating physician violated 20 C.F.R. 404.1520c and was not supported by substantial evidence; and (3) The ALJ's evaluation of Plaintiff's symptoms violated SSR 16-3p and was not supported by substantial evidence.

A.  **The ALJ Did Not Err by Not Including Manipulative Limitations in her Residual Functional Capacity**

Plaintiff first argues that the ALJ erred by failing to include manipulative limitations in Plaintiff's RFC to accommodate her bilateral carpal tunnel syndrome. Plaintiff claims that the ALJ improperly "interpret[ed] raw medical data" and that interpretation demonstrated a "fundamental misunderstanding" of Plaintiff's carpel tunnel syndrome because the ALJ provided Plaintiff with a lifting limitation, but no limitations on handling and fingering. Plaintiff explains that carpel tunnel syndrome "can cause difficulties for an individual to use their hands to hold or control objects" and the condition "can be caused or exacerbated by repetitive hand motions." But, as Defendant notes, the ALJ did not interpret the medical data for herself. Rather, she relied on consultative examiner Dr. Aleem's conclusion that Plaintiff "was able to . . . carry and handle objects without limitation." Moreover, just because carpel tunnel *can* cause difficulties with holding and controlling objects does not mean that Plaintiff actually experienced such difficulties. Indeed, the ALJ cited evidence reflecting Plaintiff's normal grip strength, normal range of motion of Plaintiff's wrists and upper extremities, ability to make a fist and oppose her fingers, ability to pick up coins, turn doorknobs, button her shirt, and tie her shoelaces. Although Plaintiff testified that she struggled with holding items, experienced numbness in her hands, and had difficulty manipulating her hands, the ALJ must often weigh conflicting evidence, and the Court may not reevaluate facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See Skinner*, 478 F.3d at 841.

Plaintiff also notes that the medical opinion of examining physician Dr. Lipov found that Plaintiff needed manipulative restrictions. The Court will discuss the fact that the ALJ found Dr. Lipov's opinion unpersuasive in detail below, but setting that fact aside, Dr. Aleem found that Plaintiff could handle objects without limitation. Just as with the conflicting evidence discussed above, the ALJ weighed conflicting medical opinions and reached a conclusion that this Court may not disturb so long as she actually weighed the evidence. *See id.*

Finally, Plaintiff asserts that Dr. Allem's exam occurred in May 2022, but Plaintiff testified that her symptoms became worse in early 2023, and the ALJ was obligated to evaluate the entire time period at issue. But the ALJ did consider Plaintiff's testimony. The ALJ also noted that in April and May 2023, Plaintiff had several medical examinations during which she demonstrated normal grip strength. Again, the ALJ weighed the conflicting evidence, and this Court may not second guess the ALJ's conclusion. Therefore, the ALJ did not err by not including manipulative restrictions in Plaintiff's RFC.

**B.     The ALJ Properly Evaluated the Medical Opinion of Plaintiff's Treating Physician**

Plaintiff next contends that the ALJ's evaluation of the medical opinion of Plaintiff's treating physician Dr. Lipov violated 20 C.F.R. 404.1520c and was not supported by substantial evidence. In advancing this argument, Plaintiff first avers that the ALJ improperly applied the supportability and consistency factors in her evaluation of Dr. Lipov's opinion because she relied on the fact that his opinion "failed to refer to specific treatment notes," which is not required by the regulation.

8

While Plaintiff is correct that the regulation does not require that a medical opinion refer to treatment notes specifically, the ALJ, in explaining that Dr. Lipov did not refer to specific treatment notes or "identify any objective clinical findings," was directly addressing the supportability factor. *See* 20 C.F.R. 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."

      Plaintiff next takes issue with the ALJ's assertion that Dr. Lipov's opinion did not "identify any objective clinical findings." Plaintiff contends that he did, in that he included in his opinion the facts that Plaintiff's medication cased lethargy and that she would need to lie down for about three hours in an average workday due to fatigue and pain and that he identified clinical findings to support his opinion. But most of the clinical findings Dr. Lipov cites in his opinion are subjective reports from Plaintiff herself. An ALJ may discount a medical opinion where it is based on a Plaintiff's subjective complaints. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). The objective clinical findings Dr. Lipov cites conflict with other clinical findings in the record, and as explained, the ALJ is free to weigh conflicting evidence as she sees fit. *See Skinner*, 478 F.3d at 841. Finally, the fact that Plaintiff's medication is known to cause lethargy does not mean that Plaintiff was experiencing that side effect. Thus, the ALJ's evaluation of Dr. Lipov's opinion as unpersuasive was proper.

9

**C.     The ALJ Properly Evaluated Plaintiff's Symptoms**

Finally, Plaintiff asserts that the ALJ's evaluation of Plaintiff's symptoms violated SSR 16-3p and was not supported by substantial evidence. First, Plaintiff claims that the ALJ's conclusion that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because she testified to using a cane for balance and stability, but she did not use a cane during the hearing, was based on an unsupported assumption because the ALJ did not know whether Plaintiff used a cane outside the hearing that day. Plaintiff also contends that it was improper for the ALJ to discount Plaintiff's cane use as undocumented in the medical record because Plaintiff testified to using a cane due to impaired balance from her medication and the record shows that Dr. Lipov prescribed the cane for spinal stenosis in 2023.

The ALJ discounted Plaintiff's cane use because the only two instances evidencing the need for a cane in the objective medical record are (1) Dr. Lipov's prescription, and (2) Dr. Lipov's note from an examination in which he observed that she had ataxic gait. Neither the prescription nor the note contains the details required under SSR 96-9p. SSR 96-9p provides that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Dr. Lipov's prescription only contains the words "cane" and "spinal stenosis." His note simply says, "Gait ataxic, needs

10

cane." Neither piece of evidence provides the required information regarding the circumstances for which it is needed. All of the other evidence Plaintiff highlights is not in the objective medical record. Because the ALJ relied on the objective medical record, she did not rely on an improper assumption. Therefore, the ALJ did not err in discounting Plaintiff's alleged need for a cane.[3]

Plaintiff next argues that the ALJ erred in finding that Plaintiff's alleged difficulty using her hands for grasping was inconsistent with the record because the ALJ relied on Dr. Aleem's observations from 2022, despite the evidence that that symptom worsened since the date of Dr. Aleem's examination. The Court has already addressed the ALJ's declination to include manipulative limitations in the RFC. To briefly reiterate, Plaintiff had several medical examinations during which she demonstrated normal grip strength that post date Dr. Aleem's examination. Thus, the ALJ's assessment of Plaintiff's symptoms was supported by substantial evidence.

---

[3] It should also be noted that despite the above, the ALJ did account for Plaintiff's need for a cane to an extent, noting that Plaintiff can "no more than frequently balance as the claimant has used a cane at times . . . . Even if [Plaintiff] should be allowed to use a cane as needed to get to and from the workstation, she would still be able to perform the job of a receptionist per the vocational expert."

11

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

**SO ORDERED.**                    **ENTERED:**

**DATE:    March 26, 2025**

                                                    **HON. MARIA VALDEZ**
                                                    **United States Magistrate Judge**